IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00065-CV

 

Nu-Way Energy Corporation,

                                                                      Appellant

 v.

 

Billy R. Delp, Jr.,

                                                                      Appellee

 

 



From the 96th District Court

Tarrant County, Texas

Trial Court No. 96-183839-00

 



CONCURRING Opinion










 

          This concurring opinion will address
(1) those portions of the majority opinion which are unnecessary and therefore
do not constitute binding authority of this Court, and (2) those portions of
the opinion that are simply erroneous but do not impact the ultimate result of
the judgment.  It will then comment on some other matters in the majority
opinion before I conclude, concurring only in the Court’s judgment.

Pure Dicta

          The entirety of the section “Exempt
Status of IRA Under Bankruptcy Plan” in the majority opinion is pure dicta.  It
is dicta because it is completely unnecessary to the disposition of the appeal
and, thus, no holding relies upon it for the effect of the judgment.  The
reason this section is unnecessary to the disposition of the appeal is because,
for the majority opinion, the section “Exempt Status of IRA Under Internal
Revenue Code” is the section which actually answers the question of whether or
not the assets held by the IRA are exempted.  Accordingly, this entire section
should be omitted from the majority opinion and no reliance should be put upon
it by those who come after us.

Erroneous Statements

          Within the section “Exempt Status of
IRA Under Bankruptcy Plan” there are various erroneous statements and this
section, thus, reaches an unsupportable result.  The majority cites Leibman
v. Grand, 981 S.W.2d 426, 435 (Tex. App.—El Paso 1998, no pet.) with a
parenthetical noting “Texas law does ‘not provide an exemption for currency,
checks, or negotiable instruments.’”  The linchpin of this section, which is
based upon this authority, is the statement “It is undisputed that the secured
claim would not have been an exempt asset if Delp had acquired it before filing
the bankruptcy petition.”  This statement is not only wrong because the issue
is not undisputed; the law is, in fact, contrary to the inference being made by
the majority.  Of course, the statement is true of anything that is not exempt,
but the statement of the majority, in the literal sense of its truth, is
totally irrelevant.  The question, if necessary to be asked in any context at
all, would be:  “Would the secured claim [the note] have been an exempt asset
if Delp’s IRA had acquired it before filing the bankruptcy
petition?”  If the asset is owned by an IRA, and the IRA is exempt, the asset
owned by the IRA is exempt.  And an IRA can, under normal circumstances, own
negotiable instruments such as the note.

          The majority’s error in this regard
cascades down to a holding that the purchase of an asset which would not be
exempt for the individual, Delp, with exempt assets from an IRA subjects the
newly acquired “non-exempt” asset to seizure/turnover.  I could readily
distinguish the cases cited by the majority to back into this position, but
there is no constructive purpose to be accomplished by doing so.

          The IRA apparently had cash to
purchase the note.  The cash was exempt because it was cash in the IRA, not
Delp’s cash.  But under the majority’s theory, the cash, before the purchase,
could not have been an exempt asset under Texas law.  This is because they
attribute the same rules regarding what can be owned by an exempt asset, the
IRA, as they do to what assets cannot be exempt if owned by the individual
debtor, Delp.  Under the majority’s theory, any “currency, checks, or
negotiable instruments,” held by an IRA would be a non-exempt asset of the
bankruptcy debtor.  This is simply not the law.

          The dicta of the majority should be
frightening to anyone who owns an IRA.  What it essentially means is that if
the assets within an IRA contain or change from one form of currency, check, or
negotiable instrument to another form of currency, check or negotiable
instrument still owned by the IRA, the assets have nevertheless lost their
exempt status in a bankruptcy proceeding.  But the truth is that just because the
assets within the IRA plan change from one form, like cash, to another form,
like stock, the exempt character of the asset does not change.  This is because
the exempt asset is the IRA, not the individual instruments within the IRA. 
There has to be some action or transaction other than the ownership or purchase
of the type assets we normally expect IRAs to own that causes an IRA to lose
its exempt status.

 

Prohibited Transactions

          The majority discusses two prohibited
transactions.  The first is whether or not a measurable benefit received by a
guarantor of debt due to a transaction involving an IRA is a prohibited
transaction.  The second is the question of whether or not the payment of
attorney’s fees from the IRA assets is a prohibited transaction.  I will
discuss only the second.

          In footnote 6, the majority concludes
that Delp has engaged in a prohibited transaction by having paid the attorney’s
fees in defense of the IRA corpus against Nu-Way’s efforts to have their lien
asserted against them.  For this proposition, they cite O’Malley v.
Commissioner, 972 F.2d 150, 153 (7th Cir. 1992).  The attorney’s fees paid
in O’Malley that were determined to be a prohibited transaction were not
payments made to defend and protect the IRA’s exempt status.  The attorney’s
fees paid were owed by a disqualified person and the payment using IRA funds
was, therefore, a prohibited transaction leading to defeating the IRA status of
the entire fund.  In this case, however, the payments were made to an attorney
for the express purpose of defending and protecting the IRA’s exempt status. 
Payment of attorney’s fees out of the IRA for the defense of the IRA exempt
status is entirely appropriate.  If the majority’s view is the law, an IRA
could never protect itself from creditors and all defense of the IRA would have
to be paid by the owner of the IRA which assumes they would be able to pay for
it out of their other assets.

Other Questions

          Because, according to the majority,
the IRA did not exist at the time the bankruptcy plan was confirmed, but it is
undisputed that over a million dollars in assets in the IRA’s name did exist,
there are some interesting issues raised that no one has addressed.


 How
 will the IRS’s (that is all taxpayer’s) claim for taxes and penalty on the
 premature distribution of the IRA be collected?


 


 Does
 Nu-Way even have standing to assert a violation of the Tax Code in the
 management, operation, and transactions within an IRA?


 


 Does
 a state court have jurisdiction to resolve questions about the continued vitality
 of an IRA or are these claims preempted under ERISA?


 

Standard of Review

The standard of review in this case is not a de
novo determination on stipulated facts as stated by the majority.  This was a
trial before the court.  Some facts were stipulated.  But the parties also
submitted depositions, affidavits, and numerous exhibits.  No live testimony
was received.  The trial court was, nevertheless, required to make some factual
determinations and did so in extensive findings of fact.

This causes me to ask an additional question: 
Has the majority improperly ignored the trial court’s findings or implied
findings in support of the judgment?

Concurring in the
Judgment

          This case, due to its complexity as
exhibited by the presence of a half dozen briefs as well as the submission of
other legal authorities, has consumed an inordinate amount of my time.  It
involves areas of the law that state courts do not deal with frequently.  I
have studied the briefs and authorities provided by both parties as well as the
majority opinion.  While I have real concerns over many of the statements,
findings, holdings, and conclusions in the majority opinion, I, nevertheless,
have concluded from my independent analysis that the result the majority has
reached is a proper one under the law and the facts of this case.  To document
this, I could further delay the disposition of this appeal by writing a
detailed concurring opinion.  That would be my preference, and I would do so if
I had more time and other resources.  But I do not have that luxury, so I will
simply conclude by stating that, although I cannot join the majority opinion
for the reasons stated and others, I do, nevertheless, concur in the Court’s
judgment.

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Concurring
opinion delivered and filed September 6, 2006






span style='font-family:
"Palatino","serif"'>[1]               Luminant is formerly
known as TXU Generation Company L.P., which is formerly known as Texas
Utilities Electric Company.





[2]               Summary
judgment was also granted on Boyd’s negligence, gross negligence, and breach of
warranty claims.  Boyd does not challenge the granting of summary judgment as
to these claims.

 





[3]
              The Honorable Kemper Stephen Williams, Judge of the 135th District Court, sitting by assignment of the Chief
Justice of the Supreme Court of Texas pursuant to section 74.003(a) of the
Government Code.  See Tex. Gov’t
Code Ann. § 74.003(a) (Vernon 2005).